UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ALBERT MIKHAYLOVICH BARATOV
(Plaintiff)

v.

THOMAS R. KANE, ET AL.
(Defendants)

RECEIVE

DEC 1 1 2017

AT 8:30
WILLIAM T. WALSH CLE

HON. RENEE M. BUMB
C.A.# 17-3775(RMB)(JS)

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANTS' JOINT MOTION TO DISMISS THE COMPLAINT ALLEGING A FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED, PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

SUBMITTED BY:

ALBERT MIKAYLOVICH BARATOV
(IN PROPRIA PERSONA)

I.    INTRODUCTION

This matter is before the Court on joint motion of the Director of the Department of Homeland Security and the Director of the Federal Bureau of Prisons (hereinafter referred to jointly as the "defendants", unless the context of a specific statement dictates otherwise), to dismiss the Complaint for an alleged failure to state a claim upon which relief may be granted. For the reasons enumerated below, Plaintiff respectfully requests that this Court deny Defendants; motion and that they be ordered to answer the Complaint forthwith.

II. BACKGROUND

(1.0) OVERVIEW

As an initial matter, the Plaintiff respectfully submits that when summarizing the substance of this case for the Court (Document 7-1, Section II), the Defendants have grossly distorted both the factual allegations set forth in the four corners of the Complaint and the nature of the relief sought by the Plaintiff. And, that whereas this Court, when deciding a motion to dismiss under Rule 12(b)(6), is required to assume all of the well pleaded facts in the Complaint to be true - and to resolve any differences therein in favor of the non-moving party (citations and authorities regarding the Standard of review for Rule 12(b) motions set forth, infra), the Plaintiff respectfully submits that a brief analysis of the averments plead in the Complaint is both required and beneficial.

(1.1) THE DEFENDANTS' ASSERTION THAT THE PLAINTIFF'S CLAIMS "CENTER ON  HIS CLASSIFICATION BY THE BOP" IS NOT ONLY BASELESS, BUT IS NOT SUPPORTED BY EVEN THE BROADEST INTERPRETATION OF THE FACTUAL ALLEGATIONS CITED IN THE FOUR CORNERS OF THE COMPLAINT.

Counsel for the defendants begins its summarization of this case by positing that "Baratov's claims center on his classification by the BOP" (Document 7-1, @ Page 1 (ECF Page ID: 91). In support of this contention, the defendants constructed an elaborate dissertation outlining a number of Bureau of Prisons Program statements concerning the timing and procedural manner in which an inmate is classified upon commitment to the BOP (Id.). While the Plaintiff takes no position with regard to the accuracy, or even the applicability of the Program statements referenced by the defendants, he respectfully submits that the Government defendants' assertion misses the mark, and not narrowly so. Indeed, nowhere in the Complaint does the Plaintiff challenge or contest his current classification by the BOP to a low security facility (FCI Fort Dix), or the application of a public safety factor associated with his status as an alien.

Instead, the Complaint seeks to identify (by way of declaratory judgment) the Plaintiff's right to be individually CONSIDERED for placement in a residential re-entry center ("halfway house") as mandated by section 3624 of Title 18 of the United States Code (sometimes referred to as the "Second Chance Act'); and, to establish the superiority of those rights over the BOP's Memorandum of Understanding with the Bureau of Immigration and Customs Enforcement (ICE) (via injunctive relief) to blanketly accept and and lodge so-called a "Request for Voluntary Action" against the Plaintiff.

### III. STANDARD OF REVIEW

### (1.0) RULE 8(a)(2) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'". Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Moreover, the allegations in the complaint must not be "so undeveloped that [they do] not provide a defendant the type of notice of claim which is contemplated by Rule 8." Phillips v. City of Allegheny, 515 F.3d 244, 232 (3d Cir. 2008).

### (1.1) RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet Rule 8 pleading requirements. However, a Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegation in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." Twombly, supra, 550 U.S. @ 558, 127 S.Ct. @ 1955, 167 L. Ed. 2nd 929 (2007). And, although 'detailed factual allegations' are not required, a complaint must do more than simply provide 'label and conclusions' or formulaic recitations of the elements of a cause of action." (see, Davis v. Abington Mem'l Hospital, 765 F.3d 241 (3d Cir. 2014) (quoting Twombly, 550 U.S. @ 555).

Nevertheless, a court is "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 216 (3rd Cir. 2002). And, a complaint MAY NOT be dismissed "for imperfect statement of legal theory supporting the claims asserted.

See, Johnson v. City of Shelby, 135 S. Ct. 346, 346, 190 L. Ed, 2d. 309 (2014). Also, a complainant must

plead facts sufficient to show that a claim has "substantive plausibility". Id. @ 347. That plausibility must

be found on the face of the Complaint. Iqbal, supra, 556 U.S. 678, 129 S.Ct. 1937, 173 L.Ed. 2d. 868

(2009). Finally, "[a] claim has facial plausibility when the [complaint] pleads factual content that allows

the court to draw reasonable inference that the [accused] is liable for the misconduct alleged." Id. And,

deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court

to draw on its judicial experience and common sense." Id.

IV. ARGUMENT

As noted above, the government completely fails to address the facts alleged in the Complaint. For that

reason alone, their motion to dismiss should be denied and dismissed. However, in the interest of judicial

economy, the Plaintiff will set forth the law supporting the claims he actually raised, versus the those which

the Government defendants concocted from an illogical summarization of the well-pleaded Complaint.

A. THE PLAINTIFF HAS AN ABSOLUTE RIGHT TO BE CONSIDER FOR PLACEMENT IN A RESIDENTIAL
REENTRY CENTER FOR A PORTION OF HIS SENTENCE NOT TO EXCEED 12 MONTHS, PURSUANT
TO 18 U.S.C. Section 3624(c).

The four corners of the Complaint contain specific factual allegations that the BOP is under a statutory

obligations under Section 3624(c) of Title 18 to individually consider the Plaintiff for placement in what

is commonly referred to as a half-way house. (Complaint, at paragraph 64).

To be more specific, 3264(c) states, in relevant part -

"(c) Prelease custody -

(1) In general -- The Director of the Bureau of Prisons Shall, to the extent practicable, ensure that a
a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to
exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust
to and prepare for the reentry of that prisoner into the community. Such conditions may include a
community correctional facility.

(Complaint at paragraph 65)

Now, given the Government's unsubstantiated position that the Plaintiff is attacking his classification by

the Bureau of Prisons, it is important to point out that the Complaint also pleads that section 3624 "does not

create a due process liberty interest or right of an inmate to be ASSIGNED to a Residential Reentry Center

for any period of time" (Complaint, at paragraph 71). However, when enacting Section 3624, congress "DID

CREATE a due process right to be INDIVIDUALLY CONSIDERED FOR PLACEMENT IN A RESIDENTIAL

REENTRY CENTER for a period not to exceed 12 months." (Complaint, at 72).

It is the Bureau of Prison's decision to unilaterally to deny the Plaintiff that "individual consideration" in favor of honoring a voluntary action detainer lodged by ICE. (see, generally, Complaint at 73-100) which has brought about the instant lawsuit.

B.  WOODALL V. FEDERAL BUREAU OF PRISONS - 423 F.3rd 235 (3rd. Cir).

The primary relief sought by the Plaintiff in this matter is a judgment declaring that Section 3264 creates a

duty which the Bureau Prisons may only satisfy by conducting an individual assessment of him for placement in a residential reentry center. The Third Circuit conducted a detailed analysis of the BOP's "obligation" in this regard in the matter of Woodall v. Federal Bureau of Prisons, 423 F. 3d. 235 (2015). In that case, the Court stated that 18 U.S.C. Section 3624(c) "describes the BOP's obligation to prepare prisoners for community re-entry by, inter alia, placing them in community confinement". (432 F.3d @ 239). Additionally, the Woodall Court held that when considering an inmate for placement under section 3264(c), the BOP must consider the factors established by congress when enacting Section 3621 of the same title. (Id. @ 251).

As such, the Government's objection fails, insofar as the Plaintiff is not asking this court to intervene in the BOP's custody classification assignment of him, but rather, that the BOP be required to conduct the individual consideration of the Plaintiff for RRC placement, as mandated under Section 3624(c). Again, NO WHERE in the Complaint does the Plaintiff request that this court weigh in on either the BOP's classification of him, or the manner in which they have arrived at that classification decisions.

Rather, the Plaintiff seeks to enforce his right to that individual consideration, which the BOP has intentionally usurped in favor of honoring a Voluntary Action Detainer lodged by ICE. A practice which the BOP has internally utilized to write a person subject to a voluntary action detainer out of CONSIDERATION for RRC placement.

More recently, in Brown v. Warden Fairton FCI, 617 Fed. Appex. 117; 2015 U.S. App. LEXIS 11446, the Third Circuit spoke on the comparison between sections 3621 and 3624, as they relate to RRC placement. "There are two statutory provisions which govern the BOP's authority to place prisoners in RRCs. The BOP has DISCRETION under section 3621(b) to permit a prisoner to serve all or part of his sentence in an RRC. In contrast, pursuant to the Second Chance Act, 18 U.S.C. Section 3624, the BOP "shall", to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months) under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the

reentry into the community." (citing Woodall, supra). (A copy of the Brown opinion is attached hereto as Exhibit -A, pursuant to local rules governing non precedential opinions).

Finally, the Plaintiff also submits, as Exhibit B, a copy of the unpublished opinion of the Third Circuit Court in the matter of George Vasquez v. Warden Strada, 684 F.3d 431:2012 U.S. App. LEXIS 11087. In that case, the Court found that "The Second Chance Act of 2007,[], increases a federal prisoner's eligibility of pre-release placement in a halfway house from 6 to 12 months, and REQUIRES the Bureau of Prisons (BOP) to make an INDIVIDUAL determination that ensures that that placement is of 'sufficient duration to provide the greatest likelihood of successful reintegration into the community." Id. @ 432-433 (2012).

It concluding this section, it is noteworthy that Government cited twenty-nine district and circuit court opinions delving into all manner of classification and immigration issues which have no bearing on this action. On the other hand, they never once address the Plaintiff's contention that Congress, through the enactment of Second Chance Act of 2007, has mandated that every "person serving a term of imprisonment" me individually considered for RRC placement. (Woodall, Supra; Brown, Supra; Vasques, supra). Or, equally important, the Plaintiff's claims that the BOP has shirked its congressionally mandated responsibilities of adhering to a Memorandum of Understanding regarding "voluntary" detainer requests lodge by ICE.

## VI. CONCLUSION

The mere fact that the Government defendants opted to recharacterize the plainly and simply pled allegations contained in the Complaint does not change the fact that the Plaintiff has set forth a plausible claim for relief. The four corners of the Complaint clearly allege that the BOP has installed an internal policy which intentionally removes the Plaintiff from individual CONSIDERATION for placement in an RRC simply because the BOP has opted to honor "voluntary action detainer" requests submitted by ICE. There is absolutely no authority or discretion given to the BOP by Congress to decide which inmates it considers for RRC placement and which ones it refuses to consider. In fact, the text of the statute at issue (3624(c)) explicitly makes the directive applicable to every "a prisoner serving a term of imprisonment". The Plaintiff clearly falls within the ambit of the statute.

More importantly, the BOP has embarked upon this course of action without any regard to whether or not there is a likelihood that the Plaintiff will ever be deported. As the complaint also clearly alleges, the Plaintiff does not have citizenship in his country of birth; namely the Republic of Uzbekistan, because that country no longer exists. (Complaint, @ 48-58). Likewise, attached to the Complaint as Exhibit -7 is a letter from the

Russian Federation confirming that the Plaintiff has no citizenship standing therein. To further solidify that point, the Plaintiff has attached to this objection, as Exhibit-C, a letter (and accompanying English translation) from the New Republic of Uzbekistan clearly stating that he has no status with that country either. For the lack of a better term, the Plaintiff is stateless.

The Complaint fully complies with the requirements of Rule 8 and states in plain and ordinary terms a plausible claim for relief. That is, inter alia, that the BOP has enacted internal policies (some of which have been installed in the Code of Federal Regulations) which unilaterally reject, ignore and fail to take into account the congressionally mandated obligation it has to individually CONSIDER the Plaintiff for placement in an RRC. Despite the defendant's assertion to the contrary, this case is NOT about the BOP's classification of the Plaintiff.

With all due respect, and to demonstrate the nonsensical nature of the Government's Motion to Dismiss, the Plaintiff likens its creative interpretation of the facts pled in the Complaint to the following: A person driving Vehicle-A on the interstate crosses into another lane and collides with Vehicle-B. After recovering from his injuries, the driver of Vehicle-B sues the driver of Vehicle-A and serves the summons and complaint as required by Rule 4. Instead of filing an answer to the Complaint, the driver of Vehicle-A files a Rule 12(b) motion to dismiss claiming that the driver of Vehicle-B is not entitled to relief because the driver of Vehicle-A did not manufacture the asphalt on which they were both driving. While both parties were driving on asphalt, the asphalt played no role in operation of Vehicle-A or its collision with Vehicle-B.

The metaphorical asphalt in the above example represents the Plaintiff's classification by the BOP. While it certainly exists, it is not the basis for the instant lawsuit. More importantly, regardless of what that classification may be, the Plaintiff has the right to be individually CONSIDERED for placement in an RRC for up to twelve months. A mandate in and of itself which requires the BOP to undertake that individual consideration in advance of the maximum eligibility period, i.e., 12 months.

The Government's response is nothing more than a dilatory tactic to delay these matters further into the time period which the BOP needs to adequately and individually consider the Plaintiff for RRC Placement.

WHEREFORE, the Plaintiff prays that this court deny and dismiss the Government's motion to Dismiss and that the defendants be ordered to file an Answer to the Complaint within 14 days, as required by Rule 12(a)(4)(B) of the Federal Rules of Civil Procedure.

Dated: _____ / _____ / _____.

Respecfully Submitted:

Albert Baratove, Pro-se
P.O. Box 2000
Joint Base MDL, NJ 08640

## CERTIFICATION OF SERVICE

I, the undersigned, do hereby certify that I have mailed a true copy of the within objection to the attorney of record for the Government Defendants, and to the Clerk of the Third Distirct Court, Camden, New Jersey, on the _____ day of November 2017, postagae paid.

_____

**ABDULLAH ROBERT BROWN, Appellant v. WARDEN FAIRTON FCI**
**UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**
**617 Fed. Appx. 117; 2015 U.S. App. LEXIS 11446**
**No. 14-4514**
**June 25, 2015, Submitted on a Motion for Summary Dismissal Pursuant to Third Circuit LAR 27.4**
**and I.O.P. 10.6**
**July 2, 2015, Opinion Filed**

**Notice:**

**NOT PRECEDENTIAL OPINION UNDER THIRD CIRCUIT INTERNAL OPERATING PROCEDURE RULE 5.7. SUCH OPINIONS ARE NOT REGARDED AS PRECEDENTS WHICH BIND THE COURT.PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.**

**Editorial Information: Prior History**

On Appeal from the United States District Court for the District of New Jersey. (D.C. Civil No. 14-cv-00457). District Judge: Honorable Jerome B. Simandle.Brown v. Shartle, 2014 U.S. Dist. LEXIS 157112 (D.N.J., Nov. 5, 2014)

**Counsel**         ABDULLAH ROBERT BROWN, Plaintiff - Appellant, Pro se, Fairton, NJ. For WARDEN FAIRTON FCI, Defendant - Appellee: Elizabeth A. Pascal, Esq., Office of United States Attorney, Camden Federal Building & Courthouse, Camden, NJ; Caroline A. Sadlowski, Esq., Office of United States Attorney, Newark, NJ.
**Judges:** Before: RENDELL, CHAGARES and SCIRICA, Circuit Judges.

**Opinion**

{617 Fed. Appx. 118} OPINION*

PER CURIAM

Pro se appellant Abdullah Brown is currently serving a 240 month term of imprisonment imposed by the United States District Court for the Southern District of New York after being convicted of conspiracy to commit murder in violation of 18 U.S.C. § 1959(a)(5). His projected release date is August 6, 2016. Brown filed a habeas petition pursuant to 28 U.S.C. § 2241 in the United States District Court for the District of New Jersey, the jurisdiction in which he is confined, seeking an order directing the Bureau of Prisons (BOP) to transfer him to home confinement placement or a "community correctional center (CCC)"1 pursuant to 18 U.S.C. § 3621(b). The District Court dismissed the petition, and this appeal ensued. Appellee, the Warden at the Federal Correctional Institution at Fairton, N.J., moved for summary dismissal on the ground that the appeal is moot. For the reasons that follow, we will grant the motion for summary dismissal.

Brown's challenge to the BOP's failure to transfer him to an **RRC** lies under § 2241, see Woodall v.

03CASES                                          1

© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Fed. Bureau of Prisons, 432 F.3d 235, 243-44 (3d Cir. 2005); accordingly, no certificate of appealability is required to appeal, see Burkey v. Marberry, 556 F.3d 142, 146 (3d Cir. 2009). We have jurisdiction under 28 U.S.C. §§ 1291 & 2253(a).

There are two statutory provisions which govern the BOP's authority to place prisoners in RRCs. The BOP has *discretion* under § 3621(b) to permit a prisoner to serve all or part of his sentence in an **RRC**. In contrast, pursuant to the Second Chance Act, 18 U.S.C. § 3624, the BOP "shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months) under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." The BOP issued guidance directing that inmates be reviewed for pre-release **RRC** placements 17-19 months before their projected release dates. We have noted that the BOP's discretionary authority under § 3621(b) is not limited by the temporal references in § 3624(c). Woodall, 432 F.3d at 250-51. Accordingly, under § 3621(b), the BOP may place a prisoner into an **RRC** at any point during the term of imprisonment.

In his § 2241 petition, filed in January 2014, Brown alleged that he was being "deprived of [his] liberty interest" because the BOP had failed to exercise its authority pursuant to § 3621(b) to transfer him to an **RRC**. In March 2014, Brown submitted an affidavit indicating that the BOP had denied his request for a transfer on February 21, 2014. A copy of that decision, which was attached to the affidavit, essentially concluded that Brown's request for **RRC** placement under § 3624(c) was premature and that, "[i]n addition," he was not eligible for **RRC** placement under § 3621(b). The Warden filed a response to the petition2 and Brown filed a motion {617 Fed. Appx. 119} for summary judgment. The District Court denied the motion for summary judgment and dismissed the petition, holding that Brown had no liberty interest in his **RRC** placement, see Powell v. Weiss, 757 F.3d 338, 343 (3d Cir. 2014) (a prisoner has no liberty interest "in his anticipated transfer to a community correctional center"), and that he was not yet entitled to consideration under § 3624(c). On appeal, Brown argues that the District Court erred in dismissing his petition because the BOP failed to consider his request for placement pursuant to § 3621(b), which does not impose temporal limits on **RRC** placement. In his motion for summary dismissal, the Warden argues that the appeal is moot because Brown was considered for **RRC** placement. We agree.

Because the decision to transfer a prisoner pursuant to § 3621(b) is discretionary, the appropriate remedy for Brown's § 2241 petition would be "an order requiring the BOP to consider - in good faith - whether or not [he] should be transferred to a[n **RRC**]" pursuant to § 3621(b). Woodall, 432 F.3d at 251 ("[T]hat the BOP may assign a prisoner to a CCC does not mean that it must."). But, Brown received this individualized determination on February 21, 2014. In denying his request for **RRC** placement on that date, the Unit Team indicated that, "in addition" to the matter being premature under the Second Chance Act, Brown was not *then* ready for **RRC** placement: "[Y]our current designation is appropriate. . . . Therefore, your request to be transferred to an **RRC** *at this time* is denied." (Emphasis added). Accordingly, because there is no further relief available, the appeal is moot.3 Main Line Fed. Sav. & Loan Ass'n v. Tri-Kell, Inc., 721 F.2d 904, 907 (3d Cir. 1983) ("the determination that a case is moot requires that there be nothing gained by reaching a decision."); County of Morris v. Nationalist Movement, 273 F.3d 527, 533 (3d Cir. 2001) ("The mootness doctrine is centrally concerned with the court's ability to grant effective relief").

Because we conclude that this appeal is moot, we will grant Appellee's motion for summary dismissal. See 3d Cir. LAR 27.4 & I.O.P. 10.6. Brown's motion for a temporary restraining order (TRO) pursuant to Fed. R. Civ. P. 65 is denied.4

03CASES                                          2

© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**Footnotes**

\*

This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.
1

In 2006, the BOP began referring to "Community Corrections Centers" as "Residential Reentry Centers" ("RRCs"), a term we will use henceforth in this opinion.
2

In his response, the Warden asserted that Brown's affidavit was not part of the habeas petition and therefore not properly before the Court. The District Court appears to have considered the affidavit as an amendment to the petition, as it addressed, in part, the issues raised by the affidavit in its opinion. See Fed. R. Civ. P. 15(a)(1); see also Mayle v. Felix, 545 U.S. 644, 655, 125 S. Ct. 2562, 162 L. Ed. 2d 582 (2005) ("Before a responsive pleading is served, pleadings may be amended once as a 'matter of course,' i.e., without seeking court leave."). The Warden further argued that the issue the affidavit raised with respect to a transfer pursuant to § 3621(b) was unexhausted. He nevertheless stated that Brown "has exhausted his administrative remedies with respect to this request to be placed in an **RRC** or home confinement." It appears from the record that Brown has requested **RRC** placement only pursuant to § 3621(b). Because we conclude that the appeal is moot, we need not address the exhaustion issue.
3

On October 8, 2014, the BOP determined, pursuant to § 3624(c), that a limited placement of 241-270 days in an **RRC** is appropriate for Brown, who is now nearing the last 12 months of his sentence. The BOP exercises it authority, subject to abuse of discretion, to determine individual prisoner **RRC** placements by applying five factors set forth in § 3621(b) and a sixth factor pursuant to 42 U.S.C. § 17541. See Vasquez v. Strada, 684 F.3d 431, 434 (3d Cir. 2012). The BOP indicated it considered each of these factors in making this determination.
4

Brown seeks a TRO "against the appellee's (sic) to transfer [him] under 18 U.S.C. § 3621(b) to either of New York City's RRC's or directly to Home Confinement." As we noted, such a decision is within the BOP's discretion. To the extent Brown's motion raises due process violations which were not before the District Court, we decline to address them.

© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**GEORGE VASQUEZ, Appellant v. WARDEN STRADA**
**UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**
**684 F.3d 431; 2012 U.S. App. LEXIS 11087**
**No. 12-1114**
**June 1, 2012, Submitted Pursuant to Third Circuit LAR 34.1(a)**
**June 1, 2012, Opinion Filed**

**Notice:**

**NOT PRECEDENTIAL OPINION UNDER THIRD CIRCUIT INTERNAL OPERATING PROCEDURE RULE 5.7. SUCH OPINIONS ARE NOT REGARDED AS PRECEDENTS WHICH BIND THE COURT.PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.**

**Editorial Information: Subsequent History**

Ordered published by Vasquez v. Warden Strada, 2012 U.S. App. LEXIS 12563 (3d Cir., June 20, 2012)

**Editorial Information: Prior History**

On Appeal from the United States District Court for the Middle District of Pennsylvania. (D.C. Civil Action No. 11-cv-01710). District Judge: Honorable James M. Munley.Vasquez v. Strada, 2011 U.S. Dist. LEXIS 149140 (M.D. Pa., Dec. 29, 2011)

**Counsel**     GEORGE VASQUEZ, Plaintiff - Appellant, Pro se, White Deer, PA.
For STRADA, Warden, Defendant - Appellee: J. Justin Blewitt, Jr., Esq., Office of United States Attorney, Scranton, PA; Mark E. Morrison, Esq., Office of United States Attorney, Harrisburg, PA.

**Judges:** Before: SLOVITER, SMITH and COWEN, Circuit Judges.

**Opinion**

{684 F.3d 432} PER CURIAM

Appellant George Vasquez was sentenced in December 1993 in the United States District Court for the Southern District of New York to a term of imprisonment of 262 months for conspiracy to distribute heroin and for possession of heroin. In January 1996, Vasquez was sentenced in the United States District Court for the Middle District of Pennsylvania to a term of imprisonment of 14 months, to run consecutively to his New York sentence, for possession of a prohibited object. Vasquez's current projected release date with good conduct time is October 10, 2012.

The Second Chance Act of 2007, which applies here, increases a federal prisoner's eligibility for pre-release placement in a halfway house from 6 to 12 months, and requires the Bureau of Prisons (BOP) to make an individual determination that ensures that the placement is "of sufficient duration to provide the greatest likelihood {684 F.3d 433} of successful reintegration into the community." 18 U.S.C. § 3624(c)(6)(C). In accordance with the Act, regulations were issued so that placement in a community correctional facility by the BOP is conducted in a manner consistent with 18 U.S.C. § 3621(b). See 28 C.F.R. § 570.22. In addition to the individual determination under section 3621(b), a

03CASES                                    **1**

© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

prisoner's participation in, or completion of, Inmate Skills Development programs within the institution is considered separately to determine if additional placement time is warranted as an incentive under 42 U.S.C. § 17541, the Federal prisoner reentry initiative. Section 17541 requires the BOP to "provide incentives for prisoner participation in skills development programs." Id. at § 17541(a)(1)(G). One such incentive may "at the discretion of the [BOP]" include "the maximum allowable period in a community confinement facility." Id. at § 17541(a)(2)(A).

On April 20, 2011, Vasquez's Unit Team met to review his pre-release needs. As a result of this review, Vasquez was recommended for a 151-180 day placement in a Residential Re-entry Center ("**RRC**"). In making its assessment, the Unit Team considered Vasquez's criminal history, his community and financial resources, his disciplinary history, his employment skills, and family resources. Finally, Vasquez's institutional programming, specifically, his participation in or completion of Inmate Skills Development programs, was considered separately to determine whether additional **RRC** time was warranted under § 17541. It was noted that although Vasquez completed some programming courses, he had not regularly participated in educational programs during his extensive incarceration period. Vasquez's referral to community placement was subsequently approved by the Warden.

On September 14, 2011, Vasquez filed a petition for writ of habeas corpus, 28 U.S.C. § 2241, in the United States District Court for the Middle District of Pennsylvania. In this petition, Vasquez argued that the BOP failed to comply with the Federal prisoner reentry initiative, and that the BOP improperly amended section 3621(b) by unlawfully adding a sixth factor to trick inmates into thinking that they have been considered for the incentives that were never properly implemented by the BOP. Vasquez sought an order directing the BOP to grant him a community placement of 12 months. He also requested an order compelling the BOP to explain why the incentives were never created.

The BOP submitted an answer, arguing that Vasquez had not exhausted his administrative remedies. In the alternative, the BOP argued that Vasquez's habeas corpus claims lacked merit. In an order entered on December 29, 2011, the District Court agreed with both of the BOP's arguments and denied the habeas corpus petition. Vasquez appeals.

We have jurisdiction under 28 U.S.C. § 1291; United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000) (certificate of appealability not required to appeal from denial of section 2241 petition). Vasquez may resort to federal habeas corpus to challenge a decision to limit his **RRC** placement, Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 243-44 (3d Cir. 2005). However, prior to filing his petition, he was required to exhaust his administrative remedies. Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996). Vasquez conceded before the District Court that he did not exhaust his administrative remedies, but argued that exhaustion was not necessary prior to filing the instant petition.

We have held that a prisoner need not exhaust administrative remedies where{**684 F.3d 434**} the issue presented involves only statutory construction, Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981), but Vasquez asked the District Court to direct the BOP to provide him with the maximum 12-month **RRC** placement. Contrary to his assertion in the proceedings below, he was not merely challenging the construction of the Second Chance Act, or the BOP's implementation of the Federal prisoner reentry initiative. Exhaustion was required in his case, and Vasquez's habeas corpus petition properly was dismissed for failing to exhaust administrative remedies.

We further agree with the District Court that Vasquez's habeas corpus petition lacks merit in any event. Our review is limited to whether the BOP abused its discretion. See Barden v. Keohane, 921 F.2d 476, 478 (3d Cir. 2010). The BOP exercises its authority pursuant to the Second Chance Act to determine individual prisoner **RRC** placements by applying the five factors set forth in section

© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

3621(b).1 The sixth factor used by the BOP is participation and/or completion of Skills Development programs pursuant to 42 U.S.C. § 17541. The record establishes that the BOP gave Vasquez an individual review of the five statutory factors contained in section 3621(b), and the additional factor of his participation and/or completion of Skills Development programs pursuant to 42 U.S.C. § 17541, prior to recommending that he receive a 151-180 day placement.

Having reviewed the record, and the arguments on appeal, we see no abuse of discretion in the way that the section 3621(b) factors were balanced with the goals of the Second Chance Act in Vasquez's case. Indeed, Vasquez received appropriate consideration for the maximum allowable period of community placement, as reflected by the BOP's comments concerning his skills development completion, his strong ties to the community, his significant financial resources, and his housing needs. (See DC dkt #8, Ex. 2, p. 44.) The District Court properly concluded that the BOP did not abuse its discretion in reaching the determination that a 5 to 6 month placement is of sufficient duration to account for Vasquez's history.

We also agree with the District Court that Vasquez was unable to demonstrate that the BOP failed to comply with the Federal prisoner reentry initiative. Vasquez claimed that BOP violated the statute when it failed to develop any incentives for participation in Inmate Skills Development Programming other than the incentive of consideration for the maximum period in an **RRC**. Although the Second Chance Act requires the BOP to establish incentives for prisoner participation in skills development programs, the statute does not require that any particular {684 F.3d 435} incentive be established. See 42 U.S.C. §§ 17541(a)(1)(G) and (2). Moreover, Vasquez received appropriate consideration for the maximum allowable period of community placement.

For all of these reasons, we will affirm the judgment of the District Court.

**Footnotes**

1

Section 3621(b) states:

(b) Place of imprisonment. - The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering -

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence - (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28 . . .

18 U.S.C. § 3621(b).

## 03CASES                                    **3**

© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

03CASES                                                    **4**

© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the
restrictions and terms and conditions of the Matthew Bender Master Agreement.

# СПРАВКА

Выдана

## БАРАТОВ АЛЬБЕРТ МИХАЙЛОВИЧ
(фамилия, имя, отчество)

### 10.09.1975 г.р. город Ташкент
(год рождения, место рождения)

о том, что согласно Вашему заявлению от «22» июня 2017 года и в соответствии со статьи 4 Закона «О гражданстве Республики Узбекистан» от 02 июля 1992 года № 632-XII, Вы не являетесь гражданином (кой) Руспублики Узбекистан.

Вопрос о приеме гражданства Республики Узбекистан может быть решен на общих основаниях.

**Начальник Яккасарайского РУВД**
**города Ташкента подполковник**            Ф.У.Хайдаров

М.П

«____»_____17 г.

Attachment № 3

## **CERTIFICATE**

Issued to:

### **BARATOV ALBERT MIKHAILOVICH**
(last name, first name, middle name)

### **09.10.1975 y.b. Tashkent City**
(year of birth, place of birth)

in connection with your application, dated June 22, 2017 and in accordance with the Article 4 of the law on "Citizenship of Republic of Uzbekistan" from July 2, 1992, № 632-XII, you do not hold a citizenship of the Republic of Uzbekistan.

The question of accepting the citizenship of the Republic of Uzbekistan can be considered on a general basis.

Supervisor of Yakkasaraiskiy RUVD
of Tashkent City, colonel                                    /signature/ F.U. Haidarov

M.P.

**OFFICIAL SEAL**

"___"_____ 2017

------------------------------------------------------------------------------------------------------------

I, Tatiana Filippova, hereby certify that I am competent in both, English and Russian languages, and the above is a true and faithful translation of the original document.

*T. ∂L*

Tatiana Filippova

Sworn to before me this 2nd day of November, 2017

NOTARY PUBLIC

DEBORAH BARRY
Notary Public – State of New York
NO. 01BA6125173
Qualified in New York County
My Commission Expires Apr 11, 2021



Albert Baratov, 72426-054
FCI Fort Dix
P.O. Box 2000
Joint Base MDL NJ 08640

RECEIVE
DEC 11 2017
ALBERT
WILLIAM T. WALSH, CLE

CERTIFIED MAIL

7002 2030 0006 8828 6349

U.S. District Court
Third District
400 Cooper Street, Room 10
Camden, NJ 08102-1570

14.70

U.S. POSTAGE
JOINT BASE MDL, NJ
DEC 06 2017
AMOUNT
$0.00
R2305M 146429 29